# COLECCIÓN

## DE LAS SENTENCIAS Y RESOLUCIONES

### DICTADAS POR EL

## TRIBUNAL SUPREMO DE PUERTO RICO.

---

### EL PUEBLO v. MARTÍNEZ.

#### APELACIÓN procedente de la Corte de Distrito de San Juan.

##### No. 288.—Resuelto en enero 9, 1911.

DERECHO PENAL—ATAQUE CON INTENCIÓN DE COMETER MUTILACIÓN—INTENCIÓN CRIMINAL—CONSECUENCIAS NATURALES DE UN ACTO.—En la ejecución de todo acto, existe la presunción de que la persona que lo ejecuta tiene la intención de verificar las consecuencias lógicas y naturales resultantes de dicho acto, y toda persona mayor y de juicio normal se presume que conoce el terrible dolor producido por la aplicación del fuego al cuerpo humano.

ID.—CASTIGO ADECUADO AL DELITO.—El acusado impugna la pena de 9 años de presidio a que ha sido condenado por considerarla excesiva. El tribunal resolvió en apelación que dicha pena no es excesiva ni cometió abuso de discreción el juez sentenciador al imponerla, teniendo en cuenta que de acuerdo con la ley puede imponer al acusado la pena máxima de 14 años de presidio y considerando la crueldad del acto ejecutado por el acusado.

Los hechos están expresados en la opinión.

Abogado del apelante: Sr. Manuel F. Rossy.

Abogado del apelado: Sr. Jesús M. Rossy, Fiscal.

EL JUEZ ASOCIADO SR. WOLF, emitió la opinión del tribunal.

Francisco Martínez fué declarado culpable por la Corte de Distrito de San Juan, de un delito de ataque con intención de cometer mutilación, por haber atacado a Nicolás Correa, y causado al mismo varias quemaduras en los pies. El artículo 222 del Código Penal define dicho delito como sigue:

"Artículo 222.—Toda persona que atacare a otra con intención de cometer rapto (violación), sodomía, mutilación o robo, incurrirá en pena de reclusión penitenciaria por un término mínimo de un año y máximo de catorce años."

El único error que se alega es que no se ha demostrado por la prueba, una intención criminal; pero también se alega que la sentencia de nueve años es excesiva.

Los hechos son substancialmente incontestables. Nicolás Correa es un niño, cuya madre ha muerto. Antes de morir, la madre lo había dejado en una ocasión, en casa del acusado, durante dos meses; y al morir, le suplicó que cogiera el niño. El acusado lo hizo así, cuidándole al niño, vistiéndole y dándole de comer. La prueba no revela el importe de dichas atenciones, y no hay evidencia de que existieran relaciones afectuosas entre los dos. Uno de los testigos hizo una declaración, tendente a demostrar que el niño fué castigado y pegado frecuentemente, por huirse de la casa. El acusado le impuso a Nicolás el deber de llevarle su almuerzo al medio día; y el niño frecuentemente dejó de hacerlo. Según parece, se le indicó al acusado—así lo dice éste en su declaración—que para evitar que el niño se huyera, sería un medio conveniente ponerle un papel encendido en las piernas o pies.

Un día, hacia fines del mes de mayo de 1910, por la mañana, después que un tío del muchacho lo había llevado a casa del acusado, a la una de la noche, dicho acusado fué a darle un castigo; pero su mujer tenía un papel en la mano, y el acusado se lo puso encendido en los pies al muchacho, y según la declaración de un testigo, parece que lo sostuvo allí durante mucho tiempo.

El niño se lanzó a la hierba como un animal herido. El médico que lo examinó, encontró que no tenía piel en los pies, y que tenía ampollas y otras deformidades en los mismos; y que el niño no podía afirmar la planta del pie. El médico también declaró que la piel volvería, y que el niño estaría de nuevo en condiciones de poder andar. El hizo esta declaración en 15 de julio de 1910. Hubo declaraciones por parte del médico y otras personas, tendentes a demostrar que la hinchazón y demás lesiones no habían sido causadas solamente por la quema, sino en parte por la circunstancia de haber quedado las quemaduras expuestas al aire, y de haber

sido inadecuada la primera asistencia que se le dió a dicho niño. El médico dijo también que él atribuía el largo tiempo durante el cual el niño había estado enfermo de los pies, a la infección producida por la forma en que se había tratado de curarle. El niño fué presentado en la corte, donde le enseñaron al juez, los pies del mismo.

El acusado declaró que sólo había tenido la intención de castigar al muchacho para evitar que se huyera, y para hacer de él un hombre de trabajo, y porque no quería que anduviera vagando por las calles, temiendo que lo pisara un *trolley* o le ocurriera algo. Los testigos de cargo son moderados en sus declaraciones con respecto a lo que vieron; pero es evidente por la declaración del detective de la policía, que investigó el crimen, que el suceso horrorizó al vecindario, y el acontecimiento fué divulgado por las calles.

En el informe oral no se hizo esfuerzo alguno para demostrar que se había incurrido en error en el acto del juicio, y tan sólo en el alegato del letrado defensor, se insiste en que no se ha demostrado ninguna intención criminal. Cualquiera persona que aplique fuego al cuerpo de otra, lo mismo que la que haga uso de un arma mortífera contra otra persona, debe considerarse que intenta las naturales y probables consecuencias de su acto.

Pero, el letrado defensor sostiene que la pena es excesiva; que el acusado aún cuando haya obrado criminalmente, no abrigaba malicia contra el muchacho, según lo demuestra el hecho de que la madre de Nicolás lo confiaba al acusado, y que éste atendía a su manutención. Pero si se trata de descubrir un motivo de enojo, puede encontrársele en la omisión por parte del muchacho, de llevarle el almuerzo al acusado. No hay ninguna persona normal, y ciertamente ninguna persona adulta y normal que no conozca el terrible dolor producido por el fuego. Si una Legislatura castigara un delito como éste, mediante una pena que consistiera en quemarle los pies al acusado de una manera análoga, tal pena sería de-

clarada anticonstitucional en todas partes de los Estados Unidos, como un castigo cruel e inusitado.

Hay diferentes teorías con respecto al objeto del castigo; insistiendo algunos autores en que el efecto aterrador de una pena, es uno de sus principales objetos; pero todos ellos convienen en que el castigo es de naturaleza educadora y reformatoria, y que debe ser seguro y adecuado. Cuando se castiga un delito rápida y adecuadamente, pero no de un modo excesivo, tal castigo, aunque no disuada a un ánimo maligno, sirve para causar en la conciencia la impresión de que existe una sanción penal contra la comisión de semejantes delitos. En el caso que nos ocupa, el juez tenía la facultad discrecional para castigar al acusado con reclusión penitenciaria por un término máximo de catorce años. El acusado cometió un acto inusitadamente cruel contra un niño desamparado y sin recursos. No vemos ningún abuso de discreción en la resolución del tribunal sentenciador, ni motivo alguno para modificar la sentencia, la cual debe ser confirmada.

*Confirmada.*

Jueces concurrentes: Sres. Presidente Hernández, y Asociados MacLeary y del Toro.